UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| DANIEL REED CHRISTENSEN, | ) | CIV. 10-4128-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROSIE QUINN; | ) | ORDER GRANTING IN PART |
| SECOND CHANCE RESCUE CENTER; | ) | AND DENYING IN PART |
| JAMES ADAMSON, individually and | ) | DEFENDANT LANDEEN'S |
| in his official capacity as a Turner | ) | MOTION TO QUASH |
| County Commissioner; | ) | [DOCKET NO. 219] |
| LUVERNE LANGEROCK, individually | ) | |
| and in his official capacity as a | ) | |
| Turner County Commissioner; | ) | |
| JOHN OVERBY, individually and in | ) | |
| his official capacity as a Turner | ) | |
| County Commissioner; | ) | |
| STEVE SCHMEICHEL, individually | ) | |
| and in his official capacity as a | ) | |
| Turner County Commissioner; | ) | |
| LYLE VAN HOVE, individually and in | ) | |
| his official capacity as a Turner | ) | |
| County Commissioner; | ) | |
| TIFFANI LANDEEN-HOEKE, | ) | |
| individually and in her official | ) | |
| capacity as Turner County State's | ) | |
| Attorney; | ) | |
| BYRON NOGELMEIER, individually | ) | |
| and in his official capacity as Turner | ) | |
| County Sheriff; | ) | |
| JAY OSTREM, individually and in his | ) | |
| official capacity as a Turner County | ) | |
| Deputy; | ) | |
| JIM SEVERSON, individually and in | ) | |
| his official capacity as a Special Agent | ) | |
| for the Division of Criminal | ) | |
| Investigation; | ) | |
| LARA CUNNINGHAM, individually | ) | |
| and in her official capacity as a | ) | |
| Revenue Agent for the South Dakota | ) | |
| Department of Revenue and | ) | |
| Regulations; | ) | |
| THE HUMANE SOCIETY OF THE | ) | |
| UNITED STATES a/k/a HSUS; | ) | |
| | ) | |
| | ) | |

| WAYNE PACELLE; | ) |
| SCOTTLUND HAISLEY; | ) |
| DR. ADAM BAUKNECHT; | ) |
| EMERGENCY ANIMAL RESCUE | ) |
| SANCTUARY a/k/a EARS; | ) |
| DR. DAWN DALE; and | ) |
| TURNER COUNTY, SOUTH DAKOTA; | ) |
| | ) |
| Defendants. | ) |

## INTRODUCTION

This matter is before the court on plaintiff Daniel Reed Christensen's[1]

amended complaint alleging claims that defendants, acting under color of state

law, violated his constitutional rights as provided under 42 U.S.C. § 1983. See

Docket No. 133. Mr. Christensen also asserts various state law claims. Id. The

basis of this court's jurisdiction is apparently the presence of a federal question

under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.[2]

Mr. Christensen served a subpoena *duces tecum* on the Turner County

Auditor, seeking production of the personnel file of defendant Tiffany Landeen-

Hoeke ("Landeen"), as well as other documents. Ms. Landeen filed a motion to

quash that subpoena. See Docket No. 219. The district judge, the Honorable

Karen E. Schreier, referred Ms. Landeen's motion to this magistrate judge for

determination pursuant to 28 U.S.C. § 636(b)(1)(A).

---

[1] Originally, David Reed Christensen and Kelly Jo Ann Christensen were also
named plaintiffs. See Docket No. 1. They were dismissed as parties to this
litigation pursuant to a stipulation for their dismissal. See Docket No. 193.

[2] Although plaintiff's complaint has a section entitled "Jurisdiction," the
complaint never states the basis for this court's exercise of subject matter
jurisdiction over this matter. See Docket Nos. 1 and 133. The court notes that
Fed. R. Civ. P. 8(a) requires "a short and plain statement of the grounds for the
court's jurisdiction." The complaint in this matter is deficient in this regard.

# FACTS

The limited facts necessary to resolve the pending motion are as follows. The facts are drawn largely from the amended complaint, not because the court assumes the truth of the matters alleged therein, but because an understanding of the facts and claims being alleged by the plaintiff is necessary to resolve the pending motion.

Mr. Christensen, a resident of Turner County, South Dakota, had a dog breeding business at his own residence and at the residence of his son and daughter-in-law. Both residences were located in Turner County.

Turner County had previously contracted with defendant Second Chance Animal Rescue ("Second Chance") to provide animal control enforcement services for the county pursuant to SDCL § 40-2-5. Second Chance is a nonprofit corporation organized for the purpose of preventing animal cruelty. Rosey Quinn is the executive director for Second Chance. Under the contract between Turner County and Second Chance, Ms. Quinn was afforded all the powers of a "peace officer" under the laws of the state of South Dakota, including the power to arrest, to carry a gun, to wear a badge and uniform, and to execute search warrants.

On September 2, 2009, Mr. Christensen's property was searched pursuant to search warrants obtained jointly by defendants Rosey Quinn and Ms. Landeen. Ms. Landeen was at the time the Turner County State's Attorney. As a result of the searches pursuant to these warrants, all of Mr. Christensen's

breeding dogs and puppies, 173 animals in all, were seized by defendants and Mr. Christensen was charged with state crimes. In the days following the seizure, new puppies born to dogs that had been pregnant at the time of the search were also seized.

Subsequently, a state court magistrate judge granted a defense motion to suppress all the evidence seized pursuant to the two search warrants. The state court judge ruled that Ms. Quinn and Ms. Landeen had withheld exculpatory evidence from the judge who had issued the search warrants and that, if such exculpatory evidence had been revealed, the issuing judge would have found probable cause for the search warrants to be lacking. In the wake of the judge's ruling, the state dismissed the criminal charges against Mr. Christensen.

In the aftermath of the searches, Mr. Christensen suffered monetary losses as a result of the seizure of his dogs, including the death and devaluation of many dogs. Mr. Christensen brought this action, seeking damages for claims based on these facts.

The complaint asserts claims against Turner County and many of its employees, including the county commissioners, Ms. Landeen as State's Attorney, the Turner County Sheriff and one of his deputies. Other defendants include a state Division of Criminal Investigation agent, a state revenue agent, the Humane Society of the United States, and Emergency Animal Rescue Sanctuary. These defendants are alleged to have helped with the seizure of plaintiff's dogs and/or with the care of those animals post-seizure. Defendants

4

Wayne Pacelle and Scotlund Haisley are associated with the Humane Society. Two veterinarians who helped care for plaintiff's seized dogs, Dr. Dawn Dale and Dr. Adam Bauknecht, were also named as defendants.

The claims involving Ms. Landeen are that she was dishonest in obtaining the search warrants that resulted in the seizure of Mr. Christensen's dogs. Loosely paraphrasing, Mr. Christensen alleges that the county should have known of Ms. Landeen's unfitness for office and should have acted to have her removed from office. If the county had acted to remove Ms. Landeen, the searches would not have occurred argues Mr. Christensen.

Plaintiff alleges that Rosey Quinn participated in the dishonest procurement of the search warrants against him. Also, again loosely paraphrasing, Mr. Christensen argues that the county made an undue delegation of police power to Ms. Quinn when it conferred on her all the powers of a peace officer, including the power to apply for and obtain search warrants.

On February 19, 2012, Mr. Christensen served the Turner County Auditor with a subpoena *duces tecum* seeking production of the following:

1.    a copy of Ms. Landeen's personnel file;

2.    a copy of a surveillance video, allegedly showing Ms. Landeen pushing Lisa (Kielbasa) Smidt in July 2008;

3.    a copy of any complaint made against Ms. Landeen during her employment with Turner County, and specifically relating to the alleged pushing incident in July 2008;

4.    a copy of any and all files kept by the Turner County Auditor's Office concerning Ms. Landeen;

5.    a copy of an alleged "separate file" relating to the July 2008 incident;

6.    a copy of any correspondence sent to the Attorney General's office regarding the alleged July 2008 pushing incident;

7.    a copy of any documentation from the Attorney General's Office received by Turner County relating to the alleged July 2008 pushing incident; and

8.    a copy of any agenda for a Board of Turner County Commissioners meeting showing that the Board addressed any proposed changes to Turner County's Animal Control Ordinance, as well as the minutes from said meeting.

See Docket No. 220-1 at 7-8 ("Exhibit A").[3]

Ms. Landeen now moves to quash the subpoena on various grounds. Turner County has joined Ms. Landeen's motion, as have defendants James Adamson, Luverne Langerock, John Overby, Steve Schmeichel, Lyle Van Hove, Byron Nogelmeier, and Jay Ostrem, all defendants who are associated with the county. Plaintiff opposes Ms. Landeen's motion. Docket No. 233. The court

---

[3]The subpoena did not number the items requested by using numerals 1 through 8 as the court has done. Instead, the items were listed as A, Aa, Ab, Ac, B, C, D, and E. See Docket No. 220-1, pages 7-8. Item #1 in the court's list corresponds to item A in the subpoena, item #2 corresponds to item Aa, #3 is item Ab, #4 is item Ac, #5 is item B, and so on.

6

denies the request for oral argument on the motion, finding that the issues are fully addressed in the parties' briefs.

## DISCUSSION

**A.     Standing**

Mr. Christensen argues that the subpoena is directed at the Turner County Auditor, not Ms. Landeen.  Ms. Landeen lacks standing to contest the subpoena, argues Mr. Christensen, because neither she nor her lawyer represents the county and its interests.

The Turner County Auditor is an officer of Turner County.  If the subpoena were to be opposed by the auditor, it would be through the county and the county's attorney.  Turner County's joinder in Ms. Landeen's motion (see Docket No. 230), therefore ensures that the proper party with standing to object to the subpoena is a moving party herein.

In addition, the court notes that the subpoena seeks Ms. Landeen's personnel file and documents related to her work performance.  She has standing to assert a defense to the discovery of these documents intimately concerned with her personally.  Therefore, the court will reach the merits of the discovery dispute.

**B.     Relevancy**

Much of the argument on both sides of this motion concerns the relevancy of the documents requested.  Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

See FED. R. CIV. P. 26(b)(1). Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

(B) *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify the conditions for the discovery.

(C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources,

the importance of the issues at stake in the action, and
the importance of the discovery in resolving the issues.

See FED. R. CIV. P. 26(b)(2)(B) and (C).

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").   The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.  The dividing line

between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard . . . . In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings . . . . When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See FED. R. CIV. P. 26(b)(1) Advisory Committee's Note (2000 Amendment).

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. Id. "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, No. 8:03CV165, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before

production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id.; see Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972).

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See FED. R. CIV. P. 26(b)(1) Advisory Committee's Note (2000 Amendment). Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit..." See FED. R. CIV. P. 26(b)(2)(C); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive. Penford Corp. v. Nat'l Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Fin. Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden–that party must make a specific showing of reasons *why* the relevant discovery should not be had. Cincinnati Ins. Co. v. Fine Home Managers, Inc., 4:09CV234, 2010 WL 2990118, *1 (E.D. Mo. Jul. 27, 2010); see also Burns v. Imagine Films Entm't, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

The court notes that plaintiff has asserted a § 1983 claim. To establish a *prima facie* case under § 1983, the plaintiff must show: (1) that the action occurred "under color of law" and (2) that the action resulted in a deprivation of a constitutional right or federal statutory right. See Scheeler v. City of St. Cloud, Minn., 402 F.3d 826, 830 (8th Cir. 2005) (citing Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1426 (8th Cir. 1986) (internal citation omitted)). Qualified immunity is a common defense to a § 1983 claim. The analysis of such a defense requires a two-step inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff establish the deprivation of a constitutional right and (2) whether that right was clearly established at the

time of the deprivation.  <u>Jones v. McNeese</u>, 675 F.3d 1158, 1161 (8th Cir. 2012). In evaluating step two, the court must consider whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what [she] is doing violate[d] that right."  <u>Id.</u> (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).

In applying the above standards to the discovery request in this case, the court divides the discovery requested by Mr. Christensen into two groups: those discovery requests concerned only with evidence of the alleged July, 2008, pushing incident and those requests that more generally involve evidence of Ms. Landeen's job performance.

**1.    Evidence Pertaining Only to the Alleged Pushing Incident**

The following items requested by Mr. Christensen in his subpoena to the Turner County Auditor deal exclusively with the alleged pushing incident:

2.      a copy of a surveillance video, allegedly showing Ms. Landeen pushing Lisa (Kielbasa) Smidt in July, 2008;

3.      a copy of any complaint made against Ms. Landeen . . . specifically relating to the alleged pushing incident in July, 2008;

5.      a copy of an alleged "separate file" relating to the July, 2008, incident;

6.      a copy of any correspondence sent to the Attorney General's office regarding the alleged July, 2008, pushing incident;

7. a copy of any documentation from the Attorney General's Office received by Turner County relating to the alleged July, 2008, pushing incident;

The court finds that the alleged July, 2008, pushing incident is not relevant to any claim or defense in this lawsuit. The alleged misconduct of Ms. Landeen as it relates to Mr. Christensen's alleged losses was misconduct of a legal nature: Ms. Landeen is said to have abandoned her lawyer's duty of candor to the court and to have subverted the legal standards applicable to search warrants that she either knew of, or should have known of.

The alleged July, 2008, incident is an incident of physical aggression. This is completely different in kind from the type of action or omission on which Mr. Christensen bases his claims against Ms. Landeen and Turner County. One's proclivity to engage in acts of physical aggression is not indicative of the likelihood that one will be dishonest in dealing with a court. In the words of Fed. R. Evid. 401(a), the pushing incident, if it occurred, "has [no] tendency to make a fact more or less probable than it would be without the evidence."

In addition, the alleged pushing incident occurred in July, 2008, whereas the acts and omissions giving rise to putative liability in this case arose 14 months later in September, 2009. This lack of temporal proximity also serves to remove the alleged pushing incident from the locus of relevancy in this case.

Mr. Christensen relies on a kind of "but-for" argument in favor of relevancy. He argues that the pushing incident gave the county sufficient

evidence and cause to remove Ms. Landeen from office.  He further argues that, if the county had acted to remove Ms. Landeen from office in 2008, she would not have been in a position to illegally obtain the search warrants against him in September, 2009.  Then the losses which Mr. Christensen has sustained stemming from the seizure of his dogs pursuant to those search warrants would not have occurred.

The statute Mr. Christensen references gives the Governor of the state of South Dakota the power to remove a state's attorney from office if the attorney willfully fails, neglects, or refuses to perform any duties imposed upon her, refuses to enforce laws relating to alcoholic beverages, is guilty of intoxication, is guilty of the violation of any law, assists or connives in the violation of a law, or is grossly incompetent.  See SDCL § 3-17-3.  The above-cited provision gives *the Governor*, not the county, the power to remove a state's attorney from office.  Id.

In addition, the Governor may act on his own power, or may act on written complaint of any citizen of the state filed with the Governor.  See SDCL § 3-17-4.  Thus, Turner County had no authority itself to remove Ms. Landeen from office, nor did the power to initiate such removal exist exclusively with the county.  In fact, using Mr. Christensen's own logic, he himself is culpable for the fact that Ms. Landeen was still in office in September, 2009, as the statute provides that any citizen may request the Governor to remove a state's attorney

from office, and presumably Mr. Christensen failed in his duty to initiate such a request.  Id.

Finally, the court notes that Mr. Christensen raised a similar argument in a previous motion in this case.  The district court dismissed the argument, saying that there was no allegation in Mr. Christensen's complaint that the Attorney General's office failed to act or failed to take any action.  Here, similarly, Mr. Christensen does not allege in his complaint that the Governor failed to take appropriate action–the Governor is not even a named party to this lawsuit.  Nor is there any allegation that Turner County failed to take appropriate action by filing a complaint against Ms. Landeen with the Governor. Evidence concerning any alleged pushing incident in July, 2008, involving Ms. Landeen is simply not relevant to the issues raised by the amended complaint and answers on file in this case.

## 2. Evidence of a More General Nature

The court considers the following discovery requests to be more general and not dealing specifically with the alleged pushing incident:

1. a copy of Ms. Landeen's personnel file;

3. a copy of any complaint made against Ms. Landeen during her employment with Turner County, . . . ;

4. a copy of any and all files kept by the Turner County Auditor's Office concerning Ms. Landeen;

8.      a copy of any agenda for a Board of Turner County Commissioners meeting showing that the Board addressed any proposed changes to Turner County's Animal Control Ordinance, as well as the minutes from said meeting.

As to these requests, the court does find them relevant. Files concerning Ms. Landeen, including her personnel file, may show that she previously engaged in the kind of behavior that she is accused of herein. The files may show that the county was on notice of a proclivity on Ms. Landeen's part to skirt the law in matters pertaining to the Fourth Amendment. The files may show that the county had reprimanded Ms. Landeen in the past for similar conduct. And the existence of any prior similar complaints, reprimands or incidents would also be relevant to whether Ms. Landeen was aware that she was violating a constitutional right of Mr. Christensen's. See <u>McNeese</u>, 675 F.3d at 1161.

Mr. Christensen alleges in his complaint that Turner County engaged in an undue delegation of the state's police power when it entered into the contract with Rosey Quinn and her organization to provide animal control services to the county. The minutes and agendas from county commission meetings where the animal control contract or the animal control ordinance were discussed are relevant to this allegation.

## C.    Confidentiality

Ms. Landeen next contends that her personnel file and related documents
are protected by a right of privacy and should be shielded from discovery for
that reason.  But the right to privacy regarding personnel files is not absolute.
It must be balanced against the need by Mr. Christensen to have the
information.

In <u>Saldi v. Paul Revere Life Insurance Company</u>, a plaintiff sued
defendant for breach of contract and bad-faith insurance for terminating
plaintiff's disability benefits.  <u>Saldi v. Paul Revere Life Ins. Co.</u>, 224 F.R.D. 169,
172 (E.D. Pa. 2004).  In <u>Saldi</u>, defendant sought a protective order to prevent
disclosure of the following information:

> [T]he personnel files and performance reviews of the employees who
> handled Plaintiff's claim and their supervisors, including a
> description of their jobs, training records, personnel evaluations, goal
> setting documents, and disciplining or rewarding documents, as well
> as information regarding participation in incentive plans, and their
> scope of authority in relationship to each other and the plaintiff.

<u>Id.</u> at 184.  Defendant also sought a protective order to prevent disclosure of
employee performance evaluations, information regarding the criteria and
process used to evaluate employee performance, information regarding
employee award and financial bonus programs, and training materials used to
train the employees who handled plaintiff's claim.  <u>Id.</u> at 184-186.

Finding such information to be relevant to plaintiff's bad-faith insurance
and breach of contract claims, the court ordered the defendant to disclose the

information.  Id.  However, recognizing that the requested information implicated defendant's confidential and proprietary business practices and policies, the court ordered the plaintiff not to disclose or exchange the information with anyone not associated with the case.  Id. at 178.  The court further ordered that the plaintiff not use the information for any other purpose than litigating the instant lawsuit without prior permission from the court.  Id. at 178; see also Dahdal v. Thorn Americas, Inc., No. 97-2119, 1997 WL 599614 at *1(D. Kan. Sept. 15, 1997) (court entered limited protective order for personnel files of employees because employees were non-parties to the suit, files commonly contain sensitive, personal information with little or no relevance to the suit, and widespread dissemination of such information could result in economic or emotional harm to the employees); Williams v. Bd. of County Comm'rs, No. 98-2385, 2000 WL 133433 at *1 (D. Kan. Jan. 21, 2000) (for the general proposition that "personnel files and records are confidential in nature and that, in most circumstances, they should be protected from wide dissemination").

Similarly, although this court finds Mr. Christensen's request for Ms. Landeen's personnel file and related documents to be relevant, that request is subject to limitation and protection.  First, personnel files often contain documents wholly unrelated to job performance or reprimands.  Heath care election forms, 401K documents, I-9 and W-2 forms are not relevant to any issue in this lawsuit and clearly contain sensitive information such as dates of

birth, election amounts, social security numbers, and similar irrelevant data.
The Turner County Auditor is directed to withhold any such documents from
disclosure pursuant to Mr. Christensen's subpoena. But performance
evaluations, complaints, and reprimands are relevant to the issue of whether
Ms. Landeen had ever committed acts or omissions similar to what is alleged in
this lawsuit. They are also obviously sensitive documents.

Previously, the district court entered a blanket protective order in this
case. See Docket No. 179. Although defendants the Humane Society of the
United States, Wayne Pacelle, and Scotlund Haisley moved for the entry of the
order, the language of the protective order applies to all parties in this case. Id.
Under the terms of the order, a party producing documents it reasonably
believes to be confidential may mark the document "Confidential–Daniel Reed
Christensen et al. v. Rosie Quinn et al., Civ. 10-4128." Id. at ¶ 3. Once a
document is so marked, its use and dissemination are circumscribed as
provided in the order. Id. at ¶¶ 5-8, 11. A party who disagrees with another
party's designation of a document as "confidential" may challenge that
designation and seek the court's *in camera* inspection of the document. Id. at
¶ 12.

This court finds that the provisions of the district court's protective order
provide adequate protection for whatever sensitive documents may be required
to be disclosed by requests 1, 3, and 4 of Mr. Christensen's subpoena *duces
tecum*. The Turner County Auditor is directed to produce the documents

relating to Ms. Landeen's job performance as described in requests 1, 3, and 4, and, if such documents are deemed to be sensitive, to mark the documents "confidential" in accordance with the district court's protective order.

## D.    Undue Burden

Ms. Landeen argues that the subpoena should be quashed as compliance with the subpoena imposes an undue burden on the Turner County Auditor. However, there is no factual support for this allegation.  No facts are asserted as to the number of documents that exist that are responsive to the subpoena, how many employee hours would be required to retrieve and produce the documents, the cost of producing the documents, or where the documents are stored.  Once Mr. Christensen demonstrates the relevancy of the documents in question, the burden shifts to Ms. Landeen to show a sufficient factual basis to defeat the discovery.  See Penford Corp., 265 F.R.D. at 433; St. Paul Reinsurance Co., 198 F.R.D. at 511.  Mere conclusory allegations do not suffice. Cincinnati Ins. Co., 2010 WL 2990118 at *1; Burns, 164 F.R.D. at 593.

Several courts have determined that where the discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise appropriate.  See In re Folding Carton Antitrust Litigation, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (stating that "[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise

appropriate' ")(internal citation omitted); <u>Alexander v. Parsons</u>, 75 F.R.D. 536, 539 (W.D. Mich. 1977) (stating that "the mere fact discovery is burdensome . . . is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence"); and <u>Burns</u>, 164 F.R.D. at 593 (determining that the fact that answering interrogatories will require the objecting party to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents and information is an insufficient basis for an objection).  Moreover, if discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable.  <u>See</u> <u>United States v. Nysco Labs., Inc.</u>, 26 F.R.D. 159, 161-62 (E.D.N.Y. 1960) and <u>Rogers v. Tri-State Materials Corp.</u>, 51 F.R.D. 234, 245 (N.D. W.Va. 1970) (stating that "[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense").

Ms. Landeen has not carried her burden to show that producing the documents in response to the subpoena–particularly producing the documents as they have been reduced and described by the court's opinion above–presents an undue burden.  Accordingly, the court overrules this objection to the discovery.

## E.     Admissibility of the Documents Under the Rules of Evidence

Ms. Landeen articulates a number of arguments against the discoverability of the documents in question on the grounds that the documents will be inadmissible at trial under Federal Rules of Evidence 403 and 404. However, as explained above, the Federal Rules distinguish between discoverability of evidence and its admissibility at trial. FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however. The court overrules Ms. Landeen's objections to discovery which are based on arguments as to admissibility at trial. These arguments may be raised in a motion *in limine* on the eve of trial if Ms. Landeen so wishes.

## CONCLUSION

Ms. Landeen's motion to quash [Docket No. 219] is granted in part and denied in part as follows:

1.     As to the request for a copy of Ms. Landeen's personnel file, only documents related to Ms. Landeen's job performance, complaints and reprimands shall be disclosed to Mr. Christensen and, if any of those documents are deemed sensitive, they shall be marked "confidential" in accordance with the district court's protective order, Docket No. 179;

2. As to the request for a copy of a surveillance video, allegedly showing Ms. Landeen pushing Lisa (Kielbasa) Smidt in July, 2008, this request is quashed;

3. As to the request for a copy of any complaint made against Ms. Landeen during her employment with Turner County, and specifically relating to the alleged pushing incident in July, 2008, the request relating to the pushing incident is quashed, but any other complaint shall be disclosed subject to the district court's protective order, Docket No. 179;

4. As to the request for a copy of any and all files kept by the Turner County Auditor's Office concerning Ms. Landeen, any such documents as are related to Ms. Landeen's job performance, complaints and reprimands shall be disclosed, but the request is quashed as to any documents not related to job performance, complaints or reprimands (documents related to the alleged pushing incident need not be disclosed);

5. As to the request for a copy of an alleged "separate file" relating to the July, 2008, incident, this request is quashed;

6. As to the request for a copy of any correspondence sent to the Attorney General's office regarding the alleged July, 2008, pushing incident, this request is quashed;

7.	As to the request for a copy of any documentation from the Attorney General's Office received by Turner County relating to the alleged July, 2008, pushing incident, this request is quashed; and

8.	As to the request for a copy of any agenda for a Board of Turner County Commissioners meeting showing that the Board addressed any proposed changes to Turner County's Animal Control Ordinance, as well as the minutes from said meeting, documents responsive to this request shall be provided.

Dated April 18, 2013.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE